MICHAEL L. TRACY, ESQ., SBN 237779
MTRACY@MICHAELTRACYLAW.COM
MEGAN ROSS HUTCHINS, ESQ., SBN 227776
MHUTCHINS@MICHAELTRACYLAW.COM
LAW OFFICES OF MICHAEL TRACY
2030 Main Street, Suite 1300
Irvine, CA 92614
T: (949) 260-9171
F: (866) 365-3051

Attorneys for Plaintiff DAMON FERRELL

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| DAMON FERRELL,<br><br>Plaintiff,<br><br>vs.<br><br>CONOCOPHILLIPS PIPE LINE CO., *et al*,<br><br>Defendants. | Case No.: EDCV09-00431 RRP (OPx)<br><br>**NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: April 5, 2010 9:00 CST<br>Judge: Hon. Rebecca R. Pallmeyer<br><br>Date Filed: March 2, 2009<br>Trial Date: NONE SET |

**TO DEFENDANT CONOCOPHILLIPS PIPE LINE CO. AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on April 5, 2010 at 9:00 CST, or as soon thereafter as counsel may be heard by the above-entitled Court, located at 3470 Twelfth St, Riverside, California, 92501, Plaintiff DAMON FERRELL will and hereby does move this Court for an order (1) for conditional certification of a Fair Labor Standards Act collective action for all hourly employees who worked on pipelines or terminals for CONOCOPHILLIPS PIPE LINE CO. within the State of California during the last three years, (2) that Plaintiff's attorney shall provide court-supervised notice, with a 120 day opt-in period to all potential collective action members, and (3) that Defendant shall provide the names and last known addresses for all collective action members.

This motion is based upon this Notice of Motion, the accompanying Motion, the accompanying Memorandum of Points and Authorities, the papers and records on file with this Court, and other such oral and documentary evidence as my be presented to the Court at or prior to the hearing on the Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 10, 2010.

DATED: February 24, 2010

LAW OFFICES OF MICHAEL TRACY

/s/

By: ______________________________

MICHAEL TRACY, Attorney for Plaintiff DAMON FERRELL

## Table of Contents

**I. INTRODUCTION** .......... **1**

**II. ARGUMENT** .......... **2**

1. Collective action certification is appropriate because there are a large number of employees who were subjected to the same illegal pay policy. .......... 2

2. The shift differential paid for night time work is directly addressed by the federal regulations and must be included in computing the regular rate of pay. .......... 3

3. The meal allowance paid to the employees is also directly covered by the regulations and needs to be included in the regular rate of pay. .......... 6

4. The meal break provisions of the California Labor Code also need to be included in the regular rate of pay, as the FLSA has no special provisions for exempting payments made pursuant to state law. .......... 9

5. Additional overtime compensation is due on benefits that were paid as cash, as the FLSA requires that those be included in the regular rate of pay. .......... 10

6. A three year statute of limitations is applicable in this initial phase because it is likely that Plaintiffs will be able to prove that the violation of the FLSA was willful .......... 11

7. Common issues predominate in that the same illegal policy of not properly including all compensation within the regular rate of pay affects all hourly employees in an identical manner, and the individual computation of damages is nothing more than inputting data into a computer and having it compute the damages. .......... 11

**III. CONCLUSION** .......... **12**

# TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*Hipp v. Liberty Nat'l Life Ins. Co.*
252 F.3d 1208 (11th Cir. Fla. 2001) .......... 11

*Kress v. PricewaterhouseCoopers, LLP*
2009 U.S. Dist. LEXIS 117949 (E.D. Cal. Nov. 25, 2009) .......... 2, 3

*McElmurry v U.S. Bank Nat'l Ass'n*
495 F.3d 1136 (9th Cir. Or. 2007) .......... 2

*McLaughlin v. Richland Shoe Co.*
486 U.S. 128 (U.S. 1988) .......... 11

*Perez v. RadioShack Corp.*
2005 U.S. Dist. LEXIS 33420 (N.D. Ill. Dec. 14, 2005) .......... 5

*Thiessen v. GE Capital Corp.*
267 F.3d 1095 (10th Cir. Kan. 2001) .......... 2

*Williamson v. General Dynamics Corp.*
208 F.3d 1144 (9th Cir. Cal. 2000) .......... 9

CALIFORNIA CASES

*Murphy v. Kenneth Cole Productions, Inc.*
40 Cal. 4th 1094 (2007) .......... 9

FEDERAL STATUTES

29 U.S.C. § 201(e)(2) .......... 9

29 U.S.C. § 207(a) .......... 5

29 U.S.C. § 216 .......... 2

29 U.S.C. § 218(a) .......... 9

29 U.S.C. § 255(a) .......... 11

CALIFORNIA STATUTES

Cal. Lab. Code § 512 .......... 9

OTHER AUTHORITIES


29 C.F.R. 778.200(a)(4) .......... 10

29 C.F.R. § 778.200 .......... 4, 5, 6, 9

29 C.F.R. § 778.200(a)(5) .......... 4

29 C.F.R. § 778.200(b) .......... 4

29 C.F.R. § 778.204 .......... 5, 6, 7, 9

29 C.F.R. § 778.207(b) .......... 5

29 C.F.R. § 778.209 .......... 11

29 C.F.R. § 778.215(a)(5) .......... 10

29 C.F.R. § 778.217(d) .......... 11

Rule 23 .......... 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I. INTRODUCTION

Plaintiff, Damon Ferrell, works for ConocoPhillips ("CONOCO") as a "bulk operator" -- that is, he loads petroleum products onto trucks to be transported to service stations. Like all the putative collective action members, Mr. Ferrell was covered by a collective bargaining agreement. The issue in the lawsuit is that the collective bargaining agreements provide for additional compensation to be paid to the employee for work during certain undesirable shifts or when a meal break is not taken, but this additional compensation is not used in computing the amount of overtime paid to the employee.

Federal law requires that all compensation be included in computing the regular rate of pay for purposes of computing overtime. For example, if a $1 per hour "shift differential" is paid to an employee working a night shift such that his total compensation is increased from $10 per hour to $11 per hour, overtime should be computed to include the $11 per hour in the regular rate of pay. The result is that overtime will be paid on a "blended" rate of the $10 per hour and $11 per hour and will thus be greater than $15 per hour. ConocoPhillips only includes the additional compensation as part of the regular rate when it is performed during overtime hours. This results in an underpayment because the rate should be included in the calculation even when it is worked during non-overtime hours.

The fact that ConocoPhillips does not include any additional compensation in computing the regular rate of pay is not in dispute. In addition, there is no dispute about the terms of the contracts that provide for these additional payments, nor is there a dispute that all the employees who are potential collective action members are subject to these contracts.

The employees who were subject to the underpayments are easily determinable and damages can be computed by mathematical calculations. As such, there is ample evidence of a uniform policy of illegally paying employees less than the required overtime rate of pay. Common issues clearly predominate as once the collective action is certified, the computation of damages can be performed by a mathematical calculation of existing payroll records.

# II. ARGUMENT

There are two collective bargaining agreements that cover approximately 80 employees working in California for ConocoPhillips. The collective bargaining agreements provide that "shift differentials" be paid for night time work and that "meal allowances" be paid when meal breaks are not provided. Federal regulations require that this additional compensation be included in the regular rate of pay for purposes of computing overtime due under the Fair Labor Standards Act. Employees also received meal premium wages for missing meal periods as provided by California law and received cash payments for educational expenses, neither of which were included in the regular rate of pay. The 80 employees working in California uniformly did not have these payments included in their regular rate of pay. As such, certification is appropriate under the liberal certification standards for collective actions.

### 1. Collective action certification is appropriate because there are a large number of employees who were subjected to the same illegal pay policy.

"A 'collective action' differs from a class action." *McElmurry v U S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. Or. 2007). Unlike a Rule 23 class action, an collective action brought under 29 U.S.C. § 216 requires that each plaintiff "opt in" to the lawsuit by giving consent in writing. *Id.* Given that non-parties are not bound by the results of a collective action, the certification process is not designed to ensure due processes being provided to unnamed parties and is more about the district court managing the action in an orderly fashion. *Id.*

In managing a collective action, the typical procedure in the Ninth Circuit is to follow a "two-tier" approach. *Kress v. PricewaterhouseCoopers, LLP*, 2009 U.S. Dist. LEXIS 117949, 9 (E.D. Cal. Nov. 25, 2009). Under this approach, the first tier is used to send notice to "similarly situated" individuals. *Id.* In determining whether individuals as "similarly situated" for purposes of a collective action, the Court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* quoting *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. Kan. 2001). The standard is "fairly lenient," and typically results in certification. *Id.*

Once the initial certification is conducted and plaintiffs are given a chance to opt-in and additional discovery is conducted, the Court then revisits the certification using a slightly stricter standard. *Kress* at 13. The stricter standard looks at (1) whether disparate factual and employment settings exist, (2) individualized defenses, and (3) fairness and procedural considerations. *Id.*

In this case, certification is appropriate under any standard because the violations alleged are part of a collective bargaining agreement with clear terms, and it is undisputed that the same pay policies applied to all employees working under these agreements. The only issue on certification is whether the pay policies contained in the collective bargaining agreements run contrary to the requirements of the Fair Labor Standards Act.

**2. The shift differential paid for night time work is directly addressed by the federal regulations and must be included in computing the regular rate of pay.**

The collective bargaining agreements contain provisions that employees that work night time shifts receive "an hourly differential based on the clock hours worked." Decl. Tracy Exhibit A. p.28 ¶A. (Hereafter, "Local 675 Agreement",). The relevant excerpts are reproduced here for ease of reference:

Local 675:

**SHIFT DIFFERENTIALS**

A. Employees assigned to the regular work schedules for shift workers shall receive an hourly differential based on the clock hours worked as follows:

**8:00 a.m. – 4:00 p.m. – 0 cents per hour**

**4:00 p.m. – 12 Midnight – 50 cents per hour**

**12:00 Midnight – 8:00 a.m. - $1.00 per hour**

IUPIW (Decl. Tracy Exhibit B p10, Article 12 ¶B):

B. Shift differentials shall be paid for the hours actually worked on an assigned afternoon shift or assigned night shift subject to the following conditions:

1. Shift differentials set forth in 2 below shall apply to shifts starting within thirty (30) minutes before and after the clock hours of the assigned shift.

2. Subject to A and B-1 above, shift differential payments for hours worked shall be:

| | | |
|---|---|---|
| Daylight Shift | 7:00 a.m. - 3:00 p.m. | $.00 Cents/Hr. |
| Afternoon Shift | 3:00 p.m. - 11:00 p.m. | $.50 Cents/Hr. |
| Night Shift | 11:00 p.m. - 7:00 a.m. | $1.00/Hr. |

The issue is that although employees are paid the "shift differentials," the rate does not increase their overtime rate of compensation as can be seen in the following extract from Mr. Ferrell's pay records:

| Earnings | Hours | Rate | Period Amount |
|---|---|---|---|
| REG EARN | 80.00 | 27.17 | 2,173.60 |
| SHIFT | 16.00 | 0.50 | 8.00 |
| SHIFT | 12.00 | 0.75 | 9.00 |
| SHIFT | 52.00 | 1.00 | 52.00 |
| OVERTIME | 16.00 | 40.76 | 652.08 |

Decl. Tracy, Exhibit C (Paystub from Ferrell for Period Ending 10/12/2008).

The above stub shows that Mr. Ferrell worked a total of 96 hours, 80 of these hours were paid at straight time ($27.17/hr) and 16 hours were paid at 1.5 times the straight time rate of $27.17 or $40.76/hr. In addition, Mr. Ferrell received $69 in "shift differential".

It should be noted that 12 hours of "Shift" pay are paid at a rate of one and one-half time the shift differential, and the additional overtime portion is considered an overtime premium, which is not included in the regular rate of pay and is credited towards overtime payments. 29 C.F.R. § 778.200. That is, the non-overtime shift differential is .50/hour for hours worked between 4 pm and midnight. (Decl. Tracy Exhibit B p. 28). If those hours also happen to be overtime hours, then they are paid at .75/hour. The regulations allow this to be considered a bona fide overtime payment and the overtime portion is not included in the regular rate of pay. 29 C.F.R. § 778.200(a)(5). In addition, the overtime portion is also credited towards any overtime payments that are due. 29

C.F.R. § 778.200(b). However, even these shift differentials that are paid at time and one half are too small because they should be paid at time and one half the regular rate of pay and not just time and one half the straight time rate. That is, the computed regular rate of pay is required to be used in computing overtime under the FLSA.

**a) The regular rate of pay for purposes of computing overtime is a computed rate that must include all compensation paid to the employee including premiums for night work**

The FLSA requires that an employee be paid "at a rate not less than one and one-half times the regular rate at which he is employed" for hours worked past 40 in a week. 29 U.S.C. § 207(a). However, the term "regular rate" has a specific meaning which is defined by the federal regulations and it is not simply the straight time rate at which the employee is typically paid. *Perez v. RadioShack Corp.*, 2005 U.S. Dist. LEXIS 33420, 5 (N.D. Ill. Dec. 14, 2005). In general, the "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee" except for what is explicitly excluded by the regulations. 29 C.F.R. § 778.200. The exclusions are for (1) small gifts, (2) vacation and holiday pay, (3) discretionary bonuses, (4) pension fund contributions, (5) overtime payments, (6) weekend work, provided it is one and one-half the normal rate, and (7) premium rate for work outside normal hours, provided it is one and one-half the normal rate. *Id.*

Here, the question of whether "shift differentials" should be included in the regular rate of pay is directly covered by additional regulations that clarify the above exclusions from the regular rate of pay computation. In particular, 29 C.F.R. §778.204 covers "clock pattern" pay. The regulation states that in order to meet the qualifications for exclusion, the premium rate must be one and one half the non-overtime rate in order to be excluded. *Id.* In addition, 29 C.F.R. §778.207(b) specifically states that the FLSA "requires the inclusion in the regular rate of such extra premiums as nightshift differentials."

As such, the proper calculation the overtime would be to divide the total non-overtime compensation by the total number of hours worked to arrive at the regular rate of pay. 29 C.F.R. §

778.200. At least one and one-half the regular rate of pay would then need to be paid as overtime compensation, with Defendant receiving credit for any overtime payments already made. *Id.* In the example of Mr. Ferrell's week ending 10/12/2008, his total non-overtime compensation was \$2674.32 for 96 hours worked. His regular rate of pay is computed as follow:

$$Regular\ Rate = \frac{Total\ Nonexcluded\ Compensation}{Total\ Hours\ worked} = \frac{\$2674.32}{96} = \$27.86$$

$$Total\ Overtime\ Due\ under\ FLSA = Regular\ Rate\ \times .5\ \times Overtime\ hours =$$

$$\$27.86\ \times .5\ \times 16 = \$222.86$$

The total overtime premium that were paid were:

$$\$27.17/hr\ \times .5\ \times 16\ hrs + (.25/hr \times .5\ \times 12\ hrs) = \$220.36$$

The result is that Mr. Ferrell was underpaid by \$2.50 for this pay period.[1]

### 3. The meal allowance paid to the employees is also directly covered by the regulations and needs to be included in the regular rate of pay.

The regulations for the computation of the regular rate of pay state that all compensation, of whatever kind or manner, must be included in the regular rate of pay unless it meets one of the requirements for exclusion. 29 C.F.R. § 778.200. The regulations directly address the issue of additional pay for missed meals and state that "where payments of premium rates for work are made after 5 p.m. only if the employee has not had a meal period or rest period, they are not regarded as overtime premiums; they are premiums paid because of undesirable working conditions" and subject to inclusion in the regular rate of pay. 29 C.F.R. §778.204. Here, it is clear that the additional payments for missed meals payments are for undesirable working conditions. The relevant portion of the contract even specifically labels them as "Overtime Meals":

---

[1] The computations done in this motion are performed on a two week pay period for simplicity. However, the actual calculation of damages would need to be done on a week by week basis. This would generally result in additional compensation being due because the overtime would no longer be averaged over the two week period. As such, the calculations here are simply offered to illustrate the harm suffered, and not the exact amount of damages for these periods.

**E. Overtime Meals**

1. Employees required to work overtime two (2) hours or more continuously beyond an eight (8) hour shift will be eligible for a meal allowance of five dollars ($5.00). In the event an employee is required to work overtime four (4) hours or more after the first meal, he will be compensated in the same manner as above for a second meal. If required to work after eating a meal, thirty (30) minutes to eat the meal will be paid for.

2. **Four (4) Day/Ten (10) Hour Work Schedule** – Employees required to work overtime two (2) hours or more continuously beyond their ten (10) hour shift shall be eligible for a meal allowance of five dollars ($5.00). In the event an employee is required to work overtime four (4) hours or more after the first meal, he or she will be compensated in the same manner as above for a second meal. If required to work after eating a meal, thirty (30) minutes to eat the meal will be paid for.

Local 675 Agreement, p.26.

In addition, the deposition testimony of Mr. Thibodeaux, the Human Resources representative for the Los Angeles Terminal employees, shows that ConocoPhillips treats these additional payments for missed meals as a penalty payments for working unfavorable conditions. Depo. Thibodeaux(Individual) p.15:13-24, "... It's just -- that's what we call it, a penalty payment. It's just an extra premium payment."[2] The payment is not any type of expense reimbursement, but is a taxable payment of wages to the employee. Depo. Thibodeaux(Individual) p.16:18-17:3.

Given that the additional overtime payment for working through the meal break is a premium payment for working during undesirable conditions, the regulations require that it be included in the regular rate of pay. 29 C.F.R. §778.204.

[2] This portion of the transcript is the cross-examination, as such the objections were made by Plaintiff's counsel, and to the extent that Plaintiff now seeks to admit that testimony, the objection is waived.

As shown in the following paystub, for the period ending 11/23/2008, the rate was not included in the overtime calculation, as part of a uniform policy of not including it in the overtime calculation:

| Earnings | Hours | Rate | Period Amount |
|---|---|---|---|
| REG EARN | 80.00 | 27.17 | 2,173.60 |
| SHIFT | 16.00 | 0.50 | 8.00 |
| SHIFT | 52.00 | 1.00 | 52.00 |
| SHIFT | 4.00 | 1.50 | 6.00 |
| OVERTIME | 10.00 | 40.76 | 407.55 |
| MEALS TAXD | 0.00 | | 15.00 |

Here, it is apparent that the overtime rate of $40.76 is just 1.5 x $27.17. In addition, an overtime shift differential was paid on 4 hours of the shift differential. However, none of these overtime calculations include either the shift differential of the premium pay for working through a meal. Using the proper calculations, a total of $2524.30 was paid for non-overtime wages, including the payments for shift differential and meal premiums. This gives us:

$$Regular\ Rate = \frac{Total\ Nonexcluded\ Compensation}{Total\ Hours\ worked} = \frac{\$2524.30}{90} = \$28.05$$

$$Total\ Overtime\ Due\ under\ FLSA = Regular\ Rate\ \times .5 \times Overtime\ hours = \$28.05 \times .5 \times 10 = \$140.25$$

However, Mr. Ferrell only received $137.85 in overtime premiums for this period, and was thus shorted $2.39 for the period. This shorting of overtime pay would occur in any week in which the premium pay was given for missed meals and overtime hours were worked without sufficient overtime premium payments being made.

**4. The meal break provisions of the California Labor Code also need to be included in the regular rate of pay, as the FLSA has no special provisions for exempting payments made pursuant to state law.**

The Fair Labor Standards Act is a federal law that applies to all employers, both public and private. 29 U.S.C. § 201(e)(2). The FLSA preempts any state law that attempts to waive the provisions of the FLSA. 29 U.S.C. § 218(a). In particular, the FLSA allows state governments to enact laws that are more protective of workers, but it does not allow them to enact less favorable provisions. *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1150 (9th Cir. Cal. 2000). In this regard, state laws are no different than private agreements between the parties. That is, if a State employee is compensated with a "night shift differential," it is not suddenly excluded from the regular rate of pay just because some state law or state regulation requires the employee to be paid it.

The issue here is that a California law requires that an additional wage be paid when a meal period is missed. Cal. Lab. Code § 512. When a meal period is missed, the employee is paid one additional hour of pay at the employees "regular rate of compensation." *Id.* This additional compensation is a wage that is payable for working in unfavorable conditions. *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1103 (2007).

Given that this additional payment is a wage that is paid for working unfavorable conditions, the FLSA regulations specifically require that it be included in the regular rate of pay calculation. 29 C.F.R. § 778.204. It is equally clear that this additional wage payment does not fit any of the exclusions from the regular rate that are defined in 29 C.F.R. § 778.200. As such, it must be included in the computation.

The following example from Mr. Ferrell illustrates the issue:

| Earnings | Hours | Rate | Period Amount |
|---|---|---|---|
| REG EARN | 80.00 | 27.17 | 2,173.60 |
| SHIFT | 16.00 | 0.50 | 8.00 |
| SHIFT | 52.00 | 1.00 | 52.00 |
| SHIFT | 5.50 | 1.50 | 8.25 |
| OVERTIME | 13.50 | 40.76 | 550.19 |
| CA MISMEAL | 6.00 | 27.84 | 167.04 |
| CA MISMEAL | 5.00 | 27.91 | 139.55 |
| MEALS TAXD | 0.00 | | 5.00 |

Decl. Tracy, Exhibit D (Paystub from Ferrell for Period Ending 10/26/2008).

As above, the regular rate is computed as follows·

$$Regular\ Rate = \frac{Total\ Nonexcluded\ Compensation}{Total\ Hours\ worked} = \frac{\$2917.49}{93.5} = \$31.20$$

$$Total\ Overtime\ Due\ under\ FLSA = Regular\ Rate\ \times .5\ \times Overtime\ hours = \$31.20\ \times .5\ \times 13.5 = \$210.60$$

Mr. Ferrell only received $186.15 in overtime premiums for this period. As such, he is due an additional $24.45 in overtime pay for this period. This violation would exist in any week that the California missed meal pay was given and overtime hours were worked.

### 5. Additional overtime compensation is due on benefits that were paid as cash, as the FLSA requires that those be included in the regular rate of pay.

The Fair Labor Standards Act allows certain employee benefits to be excluded from the regular rate of pay. 29 C.F.R. 778.200(a)(4). These payments must be "irrevocably made by an employer to a trustee or third party pursuant to a bona fide plan..." *Id.* The regulations go on to specifically provide that the "plan must not give an employee the right to assign his benefits under the plan nor the option to receive any part of the employer's contributions in cash instead of the benefits under the plan." 29 C.F.R. § 778.215(a)(5).

The issue is that ConocoPhillips paid its employees an educational reimbursement in cash. See Decl. Tracy Exhibit F, period ending 7/22/2007. This is an educational expense which is personal to the employee, and thus must be included in the regular rate of pay for purposes of

computing overtime. 29 C.F.R. § 778.217(d). The calculation is performed such that the expense reimbursement would be treated similar to a quarterly or annual bonus such that it would be distributed over the entire period for computing overtime. This method is described in detail in 29 C.F.R. § 778.209.

**6. A three year statute of limitations is applicable in this initial phase because it is likely that Plaintiffs will be able to prove that the violation of the FLSA was willful**

The FLSA typically applies a two year statute of limitations, except in cases where the conduct was willful where the three year statute applies. 29 U.S.C. § 255(a). Here, the evidence is that ConocoPhillips is a large petroleum distributor with sites throughout California as well as other states. Depo. Thibodeaux (30b6) p.5:3-21. They employ human resource professionals who are directly responsible for the policies at these locations. Depo. Thibodeaux(Individual) p.5:14-6:19.

In addition, ConocoPhillips has known, at least since the filing of this lawsuit that their policies were illegal and they have refused to change them. When a company is aware of FLSA violations and continues to commit them, it is more than sufficient to sustain a finding of willfulness. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (U.S. 1988). In addition, it should be noted that little evidence is required during this initial phase of class certification, and Plaintiff is not required to prove willfulness in this motion, only show that a sufficient pattern exists to allow the issue to be dealt with more efficiently as a collective action. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. Fla. 2001).

**7. Common issues predominate in that the same illegal policy of not properly including all compensation within the regular rate of pay affects all hourly employees in an identical manner, and the individual computation of damages is nothing more than inputting data into a computer and having it compute the damages.**

All of the above demonstrates that ConocoPhillips uniformly did not include all compensation within the regular rate of pay. This issue covers approximately 80 current employee of ConocoPhillips. Depo. Thibodeaux(Individual) p.4:16-5:8. The employees are covered by the two collective bargaining agreements referenced in this motion. Depo. Thibodeaux (30b6) p.13:3-14:2. ConocoPhillips uses a payroll system that automatically computes the overtime. Depo.

Thibodeaux(Individual) p.11:19-12:2. As such, any calculation performed by the system would be uniform across all the employees.

Although each employee would have individualized damages that would depend on the number of premium shift hours worked, the number of missed meals, and the amount of additional payments made to the employee, these issues are trivial to handle. As noted above, there is a mathematical formula to compute the proper amount of overtime that was paid. The only thing that is necessary is to get the payroll data for each employee who opts-in to this collective action and run their numbers through a computer.

## III. CONCLUSION

ConocoPhillips does not properly compute the regular rate of pay for any of its hourly employees working on California pipelines or terminals. As such, approximately 80 employees are underpaid each and every week. Certifying this collective action will allow them to be properly informed of their rights and given them the opportunity to be properly compensated by participating in this lawsuit. As such, Plaintiff respectfully requests an order for: (1) conditional certification of a Fair Labor Standards Act collective action for all hourly employees who worked on pipelines or terminals for CONOCOPHILLIPS PIPE LINE CO. within the State of California during the last three (3) years, (2) that Plaintiff's attorney shall provide a court-supervised notice, with a 120 day opt-in period to all potential collective action members, and (3) that Defendant shall provide the names and last known addresses for all potential collective action members.

DATED: February 24, 2010

LAW OFFICES OF MICHAEL TRACY

/s/

By: ______________________________

MICHAEL TRACY, Attorney for Plaintiff DAMON FERRELL