**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAMON FERRELL, an individual on behalf of himself and all other similarly situated and on behalf of The State of California Labor and Workforce Development Agency as a Private Attorney General,** | ) ) ) ) ) ) | **O** |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No.  5:09-cv-00431-RRP-OP |
| **CONOCOPHILLIPS PIPE LINE CO., a Delaware Corporation, and DOES 1 through 10, inclusive,** | ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Damon Ferrell works for Defendant ConocoPhillips loading petroleum products onto trucks.  Plaintiff has sued Defendant and ten unnamed individuals,[1] alleging that he was not paid sufficient overtime wages in violation of the Fair Labor Standards Act ("FLSA") and California law. Plaintiff also alleges that Defendants violated California law by failing to give him an opportunity to inspect or copy his pay records upon request and originally alleged that he was denied a proper meal break in violation of California law.  He has withdrawn the meal-break claim.  With respect to his overtime claims, Plaintiff seeks to prosecute a collective action under FLSA as well as a class action under Federal Rule of Civil Procedure 23 based on the state law wage claims, over which the court has supplementary jurisdiction.  Plaintiff has moved for conditional certification of the

---

[1] Despite significant discovery, Plaintiff has not amended his complaint to name the Doe Defendants, nor has he served any of them.  Under Federal Rule of Civil Procedure 4(m), the court must dismiss a claim against a defendant who is not served within 120 days after the complaint is filed absent a showing of good cause for the failure.  *See also Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("As a general rule, the use of 'John Doe' to identify a defendant is not favored.").  Plaintiff is ordered to name and serve the Doe Defendants within 21 days or show good cause for failing to do so.  Otherwise, they will be dismissed.  Because no argument about the Doe Defendants has been raised in the motions presently before the court, this order refers only to Defendant ConocoPhillips.

FLSA collective action, and Defendant has moved to strike both the FLSA and Rule 23 class allegations. Also pending are Plaintiff's motion to certify a Rule 23 class and Defendant's motion for summary adjudication, but those motions have not been fully briefed. For the reasons that follow, Defendant's motion to strike is denied, but further briefing is ordered on Plaintiff's motion for conditional certification of the FLSA collective action.

## **FACTUAL BACKGROUND**

This lawsuit, filed in March 2009, was initially assigned to Judge Stephen G. Larson. Judge Larson left the bench in September 2009, and, in February 2010, the case was reassigned to this court, Judge Rebecca R. Pallmeyer of the Northern District of Illinois, sitting by designation. After reassignment, the court held a telephone status conference in which it granted Plaintiff leave to file a second amended complaint and set dates for Plaintiff's motions for certification of the FLSA and Rule 23 classes. (Order of Feb. 21, 2010.)

In his Second Amended Complaint, Plaintiff proposes to represent two different Rule 23 classes as well as an FLSA class. Plaintiff concedes that one of the proposed Rule 23 classes—the "Meal Break Class"—should be stricken.[2] (Pl's Br. Opposing Mot. to Strike, at 8.) The other proposed Rule 23 class is the "Hourly Employee Class:"

> All persons who, from four years prior to the commencement of this action up to the time of judgment, worked for CONOCCO [sic] at a pipeline or terminal within the State of California and were paid on an hourly basis.

(Compl. ¶ 11.) The Complaint proposes an FLSA opt-in class with a similar definition, albeit without a time limitation: "all hourly employees working on pipelines or terminals for CONOCO within California." (*Id.* ¶ 30.) As described below, in briefing, Plaintiff has offered significant modifications to the definition of the FLSA opt-in class.

---

[2] The parties disagree on the reasons those allegations ought not proceed here, but the court need not resolve this dispute. (Pl's Br. Opposing Mot. to Strike, at 8; Def's Reply Br. Supporting Mot. to Strike, at 1.)

Plaintiff's complaint contains six claims. Claims One and Six, brought on behalf of the "Meal Break Class," are no longer at issue. (Compl. ¶¶ 43-51, 90-94.) Claim Two is the basis for the proposed FLSA collective action; it alleges that members of the collective action were compensated using a pay system that violates FLSA. (*Id.* ¶¶ 52-70.) Claim Three is brought on behalf of the "Hourly Employee Class"; it alleges that by violating FLSA with respect to the opt-in class, Defendant violated California's Business and Professions Code § 17200 *et seq.* (*Id.* ¶¶ 71-75.) Claim Four is brought on behalf of Plaintiff Ferrell only; it alleges that Defendant violated California's Labor Code § 226 by failing to provide him with an opportunity to inspect or copy his pay records upon request. (*Id.* ¶¶ 76-82.) Claim Five is brought under California's Private Attorney General Act; it alleges that the group of aggrieved employees defined as "all hourly employees of pipelines and/or terminals based in California"[3] were not paid in a timely fashion. (Compl. ¶¶ 42, 83-89.)

Claim Two, the FLSA claim, underlies Claims Three and Five, and merits further explanation. Plaintiff's employment is governed by a collective bargaining agreement ("CBA") between Defendant and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, Local 675. (Pl's Br. Supporting Conditional Certification, Ex. A.) Under the terms of the CBA, employees receive extra pay for working undesirable shifts. The shift differential payments are as follows:

| Daylight Shift | 8:00 a.m. to 4:00 p.m. | $0.00 per hour |
| Afternoon Shift | 4:00 p.m. to 12:00 a.m. | $0.50 per hour |
| Night Shift | 12:00 a.m. to 8:00 a.m. | $1.00 per hour |

(*Id.* at 28.) Thus, an employee who earns a base rate of $20 per hour will be paid at that rate during the daytime, at $20.50 per hour during the afternoon shift, and at $21 per hour during the night shift. When overtime hours fall during the afternoon or night shift, an employee is paid one-

---

[3] The court presumes this definition should be limited to such individuals employed by Defendant ConocoPhillips.

and-one-half times his base rate plus one-and-one-half times the shift differential. (*Id.* at 25-26, 28.) So, the employee earning a regular rate of $20 per hour will earn $30 per overtime hour during the day, $30.75 per overtime hour during the afternoon, and $31.50 per overtime hour during the night.[4]

Plaintiff's FLSA claim alleges that this method of computing overtime pay runs afoul of FLSA's requirement that an employee's overtime rate of pay be no less than one-and-one-half times the employee's "regular rate" of pay. FLSA § 7(a)(1), 29 U.S.C. § 207(a)(1). "Regular rate" does not mean the amount the employee would earn performing the work during non-overtime hours; it means "'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.'" *Parth v. Pomona Valley Hospital Medical Center,* 584 F.3d 794, 798 (9th Cir. 2009) *(quoting Walling v. Youngerman-Reynolds Hardwood Co., Inc.*, 325 U.S. 419, 424 (1945)). To compute it, then, one divides "all remuneration for employment paid to, or on behalf of, the employee" by the number of non-overtime hours worked. FLSA § 7(e), 29 U.S.C. 207(e). Plaintiff's claim is that Defendant's pay system does not meet this requirement because it fails to include the shift differentials, meal allowances, pay for missed meals, and educational benefits in computing the "regular rate." Defendant argues that its pay system fits comfortably within certain FLSA exceptions. At this stage in the litigation, and for the purposes of this order, however, the court need not rule on the merits of this claim.

## ANALYSIS

### A. Defendant's Motion to Strike

Defendant first objects to Plaintiff's Rule 23 class allegations and FLSA collective action allegations based on Plaintiff's failure to comply with Local Rule 23-3, which requires the filing of a motion for class certification within "90 days after service of a pleading purporting to commence

---

[4] The record contains a second CBA that Plaintiff represents covers some of his coworkers. (Pl's Br. Supporting Conditional Certification, Attachment 1, Tracy Decl. ¶ 3, Ex. B, at 8-10.) The shifts all begin and end one hour earlier than the ones just described, but the pay policy with respect to those shifts is identical.

a class action." (Def's Br. Supporting Mot. to Strike, at 3-9.) The court must overrule this objection. Assuming that Rule 23-3 applies to an FLSA collective action, the Rule itself states that it applies "unless otherwise ordered by the Court." Thus, "the Court has discretion to permit class certification after the 90 day period under the Local Rules." *Misra v. Decision One Mortgage Co., LLC*, 673 F. Supp. 2d 987, 993-94 (C.D. Cal. 2008.) The court effectively exercised that discretion when it granted Plaintiff's motion for leave to file an amended complaint and set deadlines for filing motions for certification of an FLSA collective action and a Rule 23 class. (Order of February 11, 2010.) Plaintiff complied with those deadlines. In any event, the court would not be inclined to strictly enforce Rule 23-3 in the circumstance of this case. Doing so would allow Defendant an unfair advantage as a result of the fact that this case spent several weeks as an orphan following Judge Larson's resignation.

Defendant also argues that Plaintiff's Rule 23 class allegations and FLSA collective action allegations should be stricken because the two classes are incompatible. (Def's Br. Supporting Mot. to Strike, at 10-15.) The FLSA collective action claim, which is based on allegations that Defendant underpaid a group of employees, would require those employees to opt-in to be part of the claim. The Rule 23 class, which is based on the same allegations, would be based on an opt-out rule. Defendant argues that allowing a Rule 23 class to proceed under state law is contrary to Congress's intent to limit collective actions under FLSA to employees that have affirmatively opted in to the litigation. *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 173 (1989); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003). Moreover, Defendant argues, proceeding with both classes would be too confusing to class members based on the contradiction between opting in and opting out.

Whether to allow an FLSA collective action and a Rule 23 class action to proceed simultaneously is a question that has split the courts in this and other districts. *Murillo v. Pacific Gas & Elec. Co.*, No. CIV. 2:08-1974, 2010 WL 797009, at *3 (E.D. Cal. March 5, 2010) (collecting

cases). Defendant raises important concerns about the difficulty of administering two arguably inconsistent class vehicles, but Defendant fails to explain why those concerns require the court to strike claims regarding *both* types of classes. Without expressing any judgment on the merits of Defendant's arguments, the court notes that if Congress did intend to preempt Rule 23 class actions based on state claims that mirror FLSA claims, then only the Rule 23 class should be stricken. If, on the other hand, there is no preemption and the only problem is creating comprehensible class notice, Plaintiff may prefer to proceed on the Rule 23 class claims only, assuming this court would have jurisdiction over such claims. At bottom, Defendant's arguments about the incompatibility of the two classes would be better directed to opposing Plaintiff's motion for certification of the Rule 23 Class. If a ruling on that motion, which has not been fully briefed, becomes necessary, the court will consider the argument.

**B.      Plaintiff's Motion for Conditional Certification of a Collective Action**

In the other fully briefed motion, Plaintiff seeks conditional certification of a collective action under FLSA. An employee bringing suit under FLSA may bring the claim as a collective action on behalf of "himself . . . and other employees similarly situated." FLSA § 16(b), 29 U.S.C. § 216(b). FLSA's collective action vehicle is distinct from the class action procedure under Federal Rule of Civil Procedure 23. *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). As previously mentioned, the most significant difference between a collective action and a Rule 23 class action is that the collective action permitted by FLSA has an opt-in rule: only a plaintiff who "gives his consent is writing" is bound by the result of the litigation. *Id.*; FLSA § 16(b), 29 U.S.C. § 216(b). Things are reversed in a Rule 23 Class: all class members are bound by the results *unless* they opt out. Rule 23 provides standards and procedures for the certification of a class and provision of notice to class members. FLSA contains neither, but the Supreme Court has held that a court may order notice to potential collective action plaintiffs in "appropriate cases." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). "Certification," as applied to an FLSA collective

action, refers simply to ordering that notice to potential opt-in class members may proceed.

Whether this is an appropriate case under *Hoffmann-La Roche* turns on whether a group of employees exist who are similarly situated to Plaintiff. In an influential opinion, the Tenth Circuit discussed three approaches that district courts have taken to answering that question. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001). Two approaches are based on Rule 23, one on the pre-1966 version and one on the current version, *id.*, but FLSA's collective action is distinct from Rule 23's class action. *McElmurry*, 495 F.3d at 1139. The third approach, an *ad hoc* case-by-case inquiry, has two stages: the court first "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102-03 (quotation omitted). At the conclusion of discovery, "the court then makes a second determination, utilizing a stricter standard of 'similarly situated.'" *Id.* Factors to consider in the second stage include the disparate employment settings of the individual plaintiffs, defenses available with respect to individual plaintiffs, and fairness and procedural considerations. *Id.* at 1103. The two-stage approach has predominated in district courts within the Ninth Circuit. *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 n.3 (E.D. Cal. 2009) (collecting 15 cases using two-stage approach). It has also been approved by both of the circuit courts that have considered the issue. *Thiessen*, 267 F.3d at 1105; *Hipp v. Liberty Nat'l Life Insurance Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). The court will follow it here.

In his opening brief, Plaintiff argues that the only issue at the first stage of certification is whether Defendant's overtime pay policy violates FLSA. (Pl's Br. Supporting Conditional Certification, at 3.) That is not the standard outlined in *Thiessen* and followed by the vast majority of district courts. Before determining the viability of the claim that the pay policy violates FLSA, the court must determine whether it is appropriate to allow the claim to go forward as a collective action. *Thiessen*, 267 F.3d at 1102-03. Ruling on the merits before a collective action is established would defeat the purpose of the collective action. Defendant's arguments against

conditional certification of the collective action are that Plaintiff has proposed inconsistent class definitions, Plaintiff's allegations about the existence of similarly situated employees are conclusory, the allegations are insufficient, and, moreover, Plaintiff's own testimony show that his claim must fail. (Def's Br. Opposing Conditional Certification, at 6-18.)  Defendant also argues that its pay polices do not violate FLSA. (*Id.* at 13-15.)

The court begins with Plaintiff's definition of the collective action's membership, which, Defendant correctly argues, has been a moving target. (Def's Br. Opposing Conditional Certification, at 6-7.) The complaint proposes a collective action covering "all hourly employees working on pipelines or terminals for CONOCO within California." (Compl. ¶ 30.) In his opening brief, however, Plaintiff argues that the common element among members of the proposed collective action is that they are all subject to one of two collective bargaining agreements. (Pl's Br. Supporting Conditional Certification, at 1-3, 11-12.) In his reply brief, Plaintiff concedes that his proposed class might include employees who have not suffered the alleged harm. (Pl's Reply Br. Supporting Conditional Certification, at 4-5.) Accordingly, Plaintiff proposes the following revised definition for collective action membership:

> Any hourly employees who worked for ConocoPhillips Pipe Line Co. within the State of California during that last three years who:
>
> (1) received pay in the form of a shift differential, a meal allowance, or meal premium wages in any week in which they worked more than 40 hours; or
>
> (2) received any payment for educational benefits in any year in which they worked more than 40 hours in any week; and
>
> who did not have the amounts for payments made under (1) or (2) above included in their regular-rate-of-pay on which their overtime was paid. The term "meal premium wages" means the additional one hour of pay at the employees['] regular rate of compensation required by Cal. Lab. Code §§ 226.7 and 512.

(*Id.* at 4.) This proposal solves one problem, but it is not responsive to Defendant's argument that Plaintiff's proposed class should be limited to employees subject to the pay policy embodied in the CBAs. (Def's Br. Opposing Conditional Certification, at 6-7.) The court agrees that any collective

action must be so limited.

Defendant next argues that Plaintiff's allegations are too conclusory to proceed. (*Id.* at 7-8.) The court disagrees. Plaintiff's complaint adequately explains his claims that Defendant's pay policy violates FLSA. Moreover, Plaintiff has not, as Defendant suggests, defined a class as nothing more than "employees similarly situated." Plaintiff has argued—regrettably, his proposed class definition does not properly reflect the argument—that other employees are similarly situated to him because they are subject to a pay policy, embodied in the CBAs, that violates FLSA. (Pl's Br. Supporting Conditional Certification, at 1-3, 11-12.) Defendant argues that the CBAs do not govern that pay system, but has not adequately explained why they do not. (Def's Br. Opposing Conditional Certification, at 9-10.) Both CBAs in the record state that overtime will be paid at one-and-one-half times the straight-time rate and clarify that, for work performed during the less desirable shifts, that means one-and-one-half times the sum of the straight-time rate and the shift differential. (Pl's Br. Supporting Conditional Certification, Ex. A, at 25-26, 28, Ex. B, at 8-10.)

Defendant argues that, beyond being conclusory, Plaintiff's allegations about a class of similarly situated employees are insufficient to justify allowing his collective action to proceed. (Def's Br. Opposing Conditional Certification, at 10-13.) Under the prevailing standard for the first stage of "certifying" a collective action, Plaintiff must put forth "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102-03 (quotation omitted). Defendant argues that Plaintiff has not met this requirement because he has not presented any affidavits or testimony to show that employees other than himself wish to join the lawsuit. (Def's Br. Opposing Conditional Certification, at 12.) This argument ignores the fact that Plaintiff has named seven individuals, providing phone numbers for six of them, who he believes may want to opt in. (Decl. of Jeremy F. Bollinger [28], Ex. A No. 6.) Stronger evidence of the existence of other individuals who want to opt in would help Plaintiff's case, but such evidence is not required, especially where, as here, the policy at issue is a uniform

one stated in written agreements. Defendant cites cases in which courts have refused to make an inferential leap to a collective action because a plaintiff has alleged only isolated incidents that might constitute FLSA violations. *Felix v. Davis Moreno Construction, Inc.*, No. CV F 07-0533, 2008 WL 4104261, at *7 (E.D. Cal. Sept. 3, 2008); *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07CV2579, 2008 WL 938584, *2-*3 (S.D.N.Y. Apr. 7, 2008); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003). Here, though, it takes no great leap from Plaintiff's claim that the pay policy dictated by the CBAs violate FLSA to a conclusion that many other employees could make the same claim. *Cf. Kelly v. Bluegreen Corp.,* 256 F.R.D. 626, 629-30 (W.D. Wis. 2009) (finding collective action appropriate where plaintiff alleged a company-wide policy).

Moreover, since the legal question concerns nothing more than whether a uniformly applied pay policy violates FLSA, Defendant's worries about the need for individualized inquiries are unfounded. (Def's Br. Opposing Conditional Certification, at 15-18.) Defendant relies on a case where a court found that a collective action was not appropriate because testimony from every plaintiff who opted in would have been necessary to determine liability. *Dudley v. Texas Waste Systems, Inc.*, No. Civ.A.SA-05-CA-0078, 2005 WL 1140605, at *2 (W.D. Tex. May 16, 2005). At least one court has criticized the reasoning of *Dudley* as relying on an evaluation of the claim's merits*. Mares v. Caesars Entertainment, Inc.*, No. 4:06-cv-0060, 2007 WL 118877, at *5 (S.D. Ind. Jan. 10, 2007). In any event, Plaintiff's claim is distinguishable from *Dudley* because the question whether Defendant's pay policy in fact violates FLSA is a purely legal one that does not require testimony from *any* plaintiff. And, although damages are only a secondary issue at this stage, Defendant has failed to explain why computing damage awards will require anything more than the application of a mathematical formula.

Defendant also suggests that Plaintiff himself has demonstrated, through his deposition testimony, that he does not believe he was injured. (Def's Br. Opposing Conditional Certification, at 13.) Again, the court is not persuaded. Defendant relies on Plaintiff's testimony that he knows

of no instance when he was not paid for working overtime and that he does not know anyone else who was not paid for working overtime. (Ferrell Dep., Decl. of Jeremy F. Bollinger [28], Ex. C, at 194-195.) Plaintiff's claim, however, is not that he was uncompensated for working overtime; it is that he was *undercompensated* for working overtime. True, Plaintiff's explanation of the claim during his deposition was less than precise: he testified without elaboration to understanding that there was a "calculation issue" with respect to his overtime payments. (Ferrell Dep., Pl's Reply Br. Supporting Conditional Certification, Ex. A, at 70-71, 88-89.) His failure to understand the issue as a trained accountant might is not problematic, however. It is sufficient that Plaintiff understands the gist of his claim without understanding the potentially complicated issues of law and accounting underlying the claim.

Defendant's final argument against conditional certification of Plaintiff's collective action is that the pay polices at issue do not in fact violate FLSA. (Def's Br. Opposing Conditional Certification, at 10 n.5, 13-15.) As explained, the court need not rule on the merits of Plaintiff's claim at this stage of the litigation. Nevertheless, an understanding of the legal issue underlying the claim is necessary to determining how to proceed. Defendant argues that its method of calculating overtime pay is permitted by FLSA § 7(g)(2), 29 U.S.C. § 207(g)(2), under which, "in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established," the employer complies with FLSA if the employee's overtime pay "is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours." In other words, to satisfy § 7(g)(2)'s exemption, the employer must satisfy four requirements:

    (1) the employee must perform two or more kinds of work;

    (2) the employer must establish a bona fide hourly rate for those different kinds of work;

    (3) the compensation must be paid pursuant to an agreement or understanding arrived at between the employer and the employee in advance of the performance

of the work; and

(4) the compensation must be computed at rates not less than one and one-half times such rates applicable to the same work when performed during nonovertime hours.

*Mathias v. Addison Fire Protection District No. 1*, 43 F. Supp. 2d 916, 920-21 (N.D. Ill. 1999); *see also* 29 C.F.R. § 778.419. Elements two through four appear to be satisfied in this case: there is a different rate for working on different shifts, there is an agreement that was made in advance governing those rates,[5] and the overtime compensation is computed at one-and-one-half times the rate applicable to the same work when performed during nonovertime hours. Whether Plaintiff's employment satisfies the first element, though, is not such a simple question.

In support of its argument that § 7(g)(2) applies, Defendant cites the Department of Labor's Field Operations Handbook, which treats differential rates for night work as different rates of pay for different kinds of work. DEPARTMENT OF LABOR FIELD OPERATIONS HANDBOOK § 32h02 (available at http://www.dol.gov/whd/FOH/FOH_Ch32.pdf) (last visited May 11, 2010). Plaintiff argues that this treatment contradicts 29 C.F.R. § 778.207(b), which requires the inclusion of nightshift differential pay in the regular rate calculation, but that regulation does not apply to pay systems that fall under § 7(g)(2). (Pl's Reply Br. Supporting Conditional Certification, at 3.) Nevertheless, the court is not inclined to adhere to the interpretation of the Handbook, which, as an agency manual, is not entitled to *Chevron* deference. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Like Department of Labor policy statements or opinion letters, it is entitled to deference only to the extent that it has the "power to persuade." *Id.* (opinion letter); *Bamonte v. City of Mesa*, 598 F.3d 1217, 1223 (9th Cir. 2010) (policy statement); *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001) (Field Operations Handbook).

---

[5] The court notes the inconsistency between Defendant's argument here that an agreement covers the payment system and its argument elsewhere that the CBAs do not cover the payment system.

The court has reservations about the Handbook's interpretation of § 7(g)(2) primarily because it seems contrary to the ordinary meaning of "kinds of work." The relevant definition of the word "kind" in this usage is "a specific or recognized variety." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 642 (10th ed. 1997). It would seem inconsistent with this ordinary meaning to hold that tasks performed at 1:00 p.m. constitute a separate "kind of work" from tasks performed at 1:00 a.m. only because the worker is compensated differently. Beyond ordinary meaning, the court's own legal research has failed to locate a single case adopting or supporting the Handbook's interpretation. The few cases that have considered whether two jobs are the same kind of work under § 7(g)(2) have, without considering the Handbook at all, required there to be some substantive difference between the content of those jobs before finding that two different kinds of work are at issue. *Townsend v. Mercy Hospital*, 862 F.2d 1009, 1011-12 (3d Cir. 1988) (holding that despite non-productive periods when nurses were working during normal hours, normal duties constituted different kind of work from waiting time during after-hours-on-call shift when nurses had no duties except being present); *Mathias*, 43 F. Supp. 2d at 921-23 (holding that firefighter and fire inspector are different kinds of work because the duties of each have only minimal overlap); *Hodgson v. Penn Packing Co.*, 335 F. Supp. 1015, 1021-22 (E.D. Pa. 1971) (holding that weekend work that included cutting grass, picking up paper, and other miscellaneous duties was different kind of work from normal work of bookkeeping, clerical work, butchering, and repairing equipment and machinery). As a district court recently stated, albeit in dicta, "[p]erformance of the same duties at different times of day does not constitute 'two or more kinds of work.'" *Scott v. City of New York*, 592 F. Supp. 2d 386, 405 (S.D.N.Y. 2008). Based on these authorities and ordinary meaning, the court is not prepared to find that § 7(g)(2)'s exception applies to Plaintiff's employment.[6]

---

[6] Defendant also argues that FLSA exceptions cover the way meal allowances, pay for missed meals, and educational benefits are included in overtime calculations. (Def's Br. Opposing Conditional Certification, at 10 n.5.) The argument is raised in a footnote only and is too undeveloped for the court to rule on it.

The court's discussion of the shift differential payments leaves at least one significant issue unresolved. Even if Plaintiff is correct that Defendant's pay system will sometimes result in a weekly payment that violates FLSA, it will also sometimes result in a weekly payment that does not violate FLSA. For example, under FLSA § 7(e), an employee who earns $20 per daytime hour and $21 per nighttime hour has a different "regular rate" depending on his hours. If he works 30 daytime hours and 10 nighttime hours in Week 1, his "regular rate" is [$20 x 30 + $21 x 10] / 40 = $20.25. If, in Week 2, he works 10 daytime hours and 30 nighttime hours, though, his "regular rate" is [$20 x 10 + $21 x 30] / 40 = $20.75. In those two examples, then, the employee's overtime pay must be at least $30.375 in Week 1 and $31.125 in Week 2. Under a system like Defendant's, though, overtime pay for this employee will always be $30 during the daytime shift and $31.50 during the nighttime shift. When this example employee's overtime is performed during the day, he will always prefer Plaintiff's FLSA § 7(e) system, but when his overtime is performed during the night, he will always prefer Defendant's system. When the example employee has 3 overtime hours during the day and 2 during the night, he will prefer Defendant's system in Week 1 and Plaintiff's in Week 2.

In fact, Defendant has identified four weeks in which its pay system resulted in greater compensation for Plaintiff than the one he advocates for. (Def's Br. Opposing Conditional Certification, at 17.) Plaintiff, in turn, lists an exemplary two-week period in which, he contends, he was underpaid. (Pl's Br. Supporting Conditional Certification, at 4.) Defendant has not denied that an extra payment would have been due for those weeks under Plaintiff's theory, though Defendant does argue that when Plaintiff's hours during that period are considered on a weekly basis, as required by FLSA § 7(a)(1), 29 U.S.C. 207(a)(1), the amount of the extra payment due to Plaintiff decreases. (Def's Br. Opposing Conditional Certification, at 17.) Thus, it is undisputed that in at least one week, Plaintiff was underpaid based on his interpretation of FLSA. Whether the system favors the employer or the employee in every week is irrelevant to determining whether it

complies with FLSA. As Plaintiff points out, FLSA says nothing about overpayments; it merely sets a minimum amount that employees must be paid. (Pl's Reply Br., at 5.) An employee who agrees to a pay system that pays him more than required some weeks and less than required in others is entitled to damages for the weeks where he was paid less than required.[7] Some courts have used an overpayment to offset damage awards for the underpayment of overtime, but in each one, the overpayment was not part of the employee's regular wages. *Mezger v. Price CPAs, PLLC*, No. 3:08cv0163, 2008 WL 4186189, at *4 (M.D. Tenn. Sept. 8, 2008) (collecting cases).

Still, an employee challenging a pay policy that allegedly results in overpayment some weeks and underpayment in others cannot succeed on his claim without a showing that there actually were weeks in which he was paid less than required. Regrettably, Plaintiff Ferrell has refused to identify every week in which he alleges that the pay system resulted in his being underpaid. In response to an interrogatory seeking that information, Plaintiff stated that because discovery was still in the early stages, the demand violated the work-product privilege. (Decl. of Jeremy F. Bollinger [28], Ex. A No. 12.) That answer is unacceptable. If Plaintiff does not have the records he needs to determine when he believes he was underpaid, he should file a motion to compel the production of those records.

Due to the uncertainty over which weeks Plaintiff was underpaid, the court is not yet ready to certify a collective action. As discussed above, the court has no trouble concluding that a claim regarding a pay policy embodied in CBAs is a claim likely to be shared by many employees. If the court finds that the pay policy violates FLSA and the claim succeeds, though, it is unclear whether every employee covered by the CBAs was actually harmed. Thus, in addition to narrowing the members of the collective action to those covered by the CBAs' pay policy, the membership must be narrowed further to include only those employees who, assuming Plaintiff's allegations are

---

[7] The court notes, however, that the employee's victory in recovering those damages might cause the employer to modify its pay policy such that the employee's net salary is reduced.

successful, were actually harmed by the pay policy. Plaintiff is directed to submit a new definition for the membership of the collective action along with a prima facie showing of the harm those employees allegedly suffered.

## **CONCLUSION**

Defendant's Motion to Strike Class Allegations [22] is denied. Plaintiff's Motion for Conditional Certification of a Collective Action [20] is continued for further briefing. Plaintiff is ordered to submit a new definition of the collective action that complies with the court's order within 21 days. Plaintiff is further ordered to name and serve the Doe Defendants within 21 days or show good cause for failing to do so. If he does not, those Defendants will be dismissed.

ENTER:

Dated: May 12, 2010

_____
REBECCA R. PALLMEYER
United States District Judge